USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/22/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MEMO ENDORSED

JOSHUA LEVITIN,

*Plaintiff,*

v.

RABBI CHAIM LEIBISH ROTTENBERG,
BERYL (DAVID) FRIEDMAN,
SURI (SARAH) FRIEDMAN,

HON. RACHEL TANGUAY,
HON. DAVID M. ASCHER,
ANNA KOSOVYCH,
JOHN DOE(S) 1-10

*Defendants,*

See pg.22

Case No. 7:25-cv-08524

**AMENDED MOTION AND**
**MEMORADUM OF LAW IN**
**SUPPORT OF PLAINTIFF'S**
**MOTION FOR TEMPORARY**
**RESTRAINING ORDER**

## TABLE OF CONTENTS

**INTRODUCTION FACTUAL BACKGROUND** .........................................................5

**FACTUAL BACKGROUND** ........................................................................ 6

**LEGAL STANDARD** ...........................................................................9

**ARGUMENT** .........................................................................................12

    **I.**    Irreparable Harm ………………………………......................................13

    **II.**     Likelihood of Succeed on the Merits……………………………………14

    **III.**    Balance of the Equities…………………………….…………..…15

    **IV.**    Public Interest…………………………………………….…………..…16

**ABSTENTION AND JURISDICTION**

    **A.**    Younger Abstention…………………………………………………...16

    **B.**    Rooker-Feldman Doctrine……………………………………...……18

**RELIEF REQUESTED**…………………………………………………20

**CONCLUSION**........................................................................................20

**CERTIFICATION**…………………………………………………....20

# TABLE OF AUTHORITIES

**Cases**

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008)

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
    481 F.3d 60 (2d Cir. 2007)

*Younger v. Harris,*
    401 U.S. 37 (1971)

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982)

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,*
    598 F.3d 30 (2d Cir. 2010)

*Diamond "D" Constr. Corp. v. McGowan,*
    282 F.3d 191 (2d Cir. 2002)

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
    596 F.2d 70 (2d Cir. 1979)

*Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.,*
    908 F. Supp. 1180 (W.D.N.Y. 1995)

*Garcia v. Yonkers Sch. Dist.,*
    561 F.3d 97 (2d Cir. 2009)

*Mastrio v. Sebelius,*
    768 F.3d 116 (2d Cir. 2014)

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.,*
    60 F.3d 27 (2d Cir. 1995)

*Ex parte Young,*
    209 U.S. 123 (1908)

*Thompson v. Thompson,*
    484 U.S. 174 (1988)

*Matter of Felty v. Felty,*
    *66 A.D.3d 64 (2d Dep't 2009)*

*V.S. ex rel. T.S. v. Muhammad,*
    581 F. Supp. 2d 421 (E.D.N.Y. 2008

*Pulliam v. Allen,*
    466 U.S. 522 (1984)

*Mireles v. Waco,*
    502 U.S. 9 (1991)

*Dennis v. Sparks,*
    449 U.S. 24 (1980)

*Troxel v. Granville,*
    530 U.S. 57 (2000)

*Loving v. Virginia,*
    388 U.S. 1 (1967)

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978)

*Perry v. Sindermann*,
    408 U.S. 593 (1972)

*New Orleans Public Service, Inc. v. Council of City of New Orleans,*
    491S. 350 (1989)

*JSG Trading Corp. v. Tray-Wrap, Inc.,*
    917 F.2d 75 (2d Cir. 1990)

**Statutes**

18 U.S.C. § 1951 (Hobbs Act – cited for federal standard of extortion/coercion)

28 U.S.C. § 1331 (Federal question jurisdiction)

28 U.S.C. § 1343(a)(3)-(4) (Jurisdiction for civil rights actions)

28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act)

28 U.S.C. § 1738A (Parental Kidnapping Prevention Act)

42 U.S.C. § 1983 (Civil action for deprivation of rights)

42 U.S.C. § 1985 (Conspiracy to interfere with civil rights)

42 U.S.C. § 1988 (Attorneys' fees)

Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)

**Rules**

Fed. R. Civ. P. 65

SDNY Local Civil Rule 6.1

## INTRODUCTION

Plaintiff moves for a Temporary Restraining Order ("TRO") to halt a continuous pattern of unconstitutional coercion and enforcement of legally void state court orders. Plaintiff demonstrates a clear likelihood of success on the merits because: (1) Family Court Judges enforced orders that were void ab initio after the UCCJEA divestiture in March 2025; and (2) this judicial defiance was rooted in a § 1985 joint action conspiracy that conditioned restoration of Plaintiff's custody on a private, extortionate marriage demand. The resulting harm is extraordinary: the use of void orders to enforce coercive institutionalization and forced separation of minor children, necessitating immediate relief to alter the status quo.

Defendants, including private and state actors, jointly weaponized religious authority and judicial power to condition Plaintiff's custody, organizational privileges, and professional contracts on his coerced agreement to marry Devorah Pomerantz-Friedman and facilitate her reconciliation with her parents. This coordinated scheme deprived Plaintiff and his children of constitutional rights under color of law, supporting the "joint action" and conspiracy elements required for federal relief.

The cumulative effect is a continuous, escalating pattern of extortion, deprivation of rights, and imminent danger to Plaintiff's children, substantiating the need for immediate federal intervention and emergency injunctive relief. The psychological injury suffered by the minor children is escalating and constitutes extraordinary circumstances compelling mandatory relief. For example:

William ("Zevi") Levitin's plea for rescue from his coercive environment is documented by his direct text to his older brother, Joseph, asking, **"Can I come,"** but immediately retracting his plea, stating, "**I can't bc mommy will get mad**" and **"I'm going to delete the message."** This act of self-censorship and fear is compounded by a subsequent recorded call where Zevi confirmed, **"I never... I can never speak in private,"** and reiterated his need to "delete it before my Mom would see me" [Exhibits J1–J2].

Joseph ("Yossi") Levitin, age 17½, attests to ongoing trauma and imminent risk of further harm if immediate access and reunification are not granted:

> "I have not seen my siblings in over two years. The separation has been devastating for me and for them. I am afraid that if I am forced to return to my mother, I will be sent back to a psychiatric facility until I agree to her demands. I desperately want to see my siblings and to live in a safe, stable home." [Exhibit J]

These constitutional violations and imminent harm are documented not only by medical professionals and Attorneys for the Children, but also by urgent letters from respected rabbis, community leaders, and elected officials, reflecting the community's recognition of the severity of the ongoing abuse and the inadequacy of state remedies [Exhibits A, N, O, P, K, T]

## FACTUAL BACKGROUND IN SUPPORT OF TRO

### 1. Unconstitutional Coercion and Joint Action Conspiracy

Defendants, including Rabbi Chaim Leibish Rottenberg, Beryl (David) Friedman, Suri (Sarah) Friedman, Judge Rachel Tanguay, Judge David Ascher, Chief Clerk Anna Kosovych, and John Does 1–10, jointly weaponized religious authority and judicial power to condition Plaintiff's custody, organizational privileges, and professional contracts on his coerced agreement to marry Devorah Pomerantz-Friedman and facilitate her reconciliation

7

with her parents. This coordinated scheme deprived Plaintiff and his children of constitutional rights under color of law, supporting the "joint action" and conspiracy elements required for federal relief.

## 2. Judicial Enforcement and Defiance of Appellate Authority

The judicial phase began with Judge Tanguay's summary custody reversal and issuance of a stay-away TOP on September 7, 2023, without an evidentiary hearing and against the unanimous recommendations of all Attorneys for the Children and treating professionals [Exhibits U1, N, O, P, S]. State actors then engaged in a sustained pattern of willful disobedience and procedural abuse, including:

Extending and enforcing TOPs in direct contravention of the Appellate Division's September 22, 2023, stay, which had restored Joseph's access to his father [Exhibit R].

Issuing further TOP extensions in July and September 2025 after the New York Family Court was divested of jurisdiction under the UCCJEA, rendering those orders void ab initio [Exhibits W].

Administrative misconduct, including Clerk Kosovych's false denial of the Appellate Order's receipt, leading to Plaintiff's unlawful police detention (Exhibits Z: Police Report]

## 3. Imminent and Irreparable Harm

The ongoing enforcement of these constitutionally flawed and void orders directly causes immediate, escalating, and irreparable harm, including:

Coercive institutionalization: Joseph ("Yossi") Levitin attests to imminent risk of being readmitted to a psychiatric facility until he yields to his mother's demands [Exhibit J3].

**Active coercion:** William ("Zevi") Levitin's texts and statements provide contemporaneous, non-speculative proof of a coercive, oppressive environment **"I can**

**never speak in private"; "I'm going to delete the message"** [Exhibits J]. Medical documentation and AFC affirmations confirm acute psychiatric crisis, suicidal ideation, and the necessity of the father's involvement [Exhibits K, N, O, T].

Community leaders and elected officials document the inadequacy of state remedies and the urgent need for federal intervention [Exhibit A].

**4. Organizational Extortion and Retaliation**

Plaintiff's Hatzoloh EMS radio privileges and business contracts were revoked at the direction of Defendant Rottenberg, explicitly conditioned on Plaintiff's coerced agreement to marry Devorah Pomerantz-Friedman. These retaliatory acts, including radio deactivation, contract termination, and reputational harm, were orchestrated or ratified by Rottenberg in his capacity as a Hatzoloh Rabbinic board member, and are confirmed by contemporaneous emails, text messages, and third-party letters. [Exhibits G, H].

**5. Additional Evidence of Harm and Judicial Misconduct**

Viral video evidence and expert reports document Zevi's exposure to threats and psychological trauma (Exhibits Q, K). The mother's failure to act, and the ongoing enforcement of void TOPs, have left Zevi exposed to this environment, resulting in non-compensable, ongoing harm.

The refusal to hold evidentiary or Lincoln hearings, forced separation, and disregard for the children's mature wishes and appellate stays constitute paradigmatic due process and familial association violations.

**6. Summary Statement**

Plaintiff does not seek federal review of a state custody determination, but emergency relief from a continuous and escalating pattern of extortion, unconstitutional

conditions, and deprivation of rights under color of law, including the enforcement of void and ultra vires orders after the state court was divested of jurisdiction and in the absence of any ongoing state proceedings.

## LEGAL STANDARDS

### A.    Standard for Temporary Restraining Order

To obtain a Temporary Restraining Order ("TRO"), Plaintiff must establish:  a) Likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation; b) Likelihood of irreparable harm in the absence of preliminary relief; c) Balance of equities tipping in Plaintiff's favor; c) That an injunction is in the public interest. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (setting forth four-prong standard for injunctive relief); Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (Second Circuit standard for TRO/preliminary injunction); Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (public interest prong); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (balance of hardships must tip decidedly toward movant).

In the Second Circuit, these factors are applied on a sliding scale: when the injury is grave, less of a showing of likely success is required (Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp., 908 F. Supp. 1180, 1187 (W.D.N.Y. 1995) (sliding scale application)).

Alternatively, a TRO may be granted where the movant demonstrates "sufficiently serious questions going to the merits to make them a fair ground for litigation," provided

the balance of hardships tips "decidedly" in the movant's favor (Citigroup, 598 F.3d at 35 (quoting Jackson Dairy, 596 F.2d at 72)).

The purpose of a TRO is to preserve the status quo until the court can address the merits of a preliminary injunction (Garcia v. Yonkers Sch. Dist., 561 F.3d 97, 107 (2d Cir. 2009) (TRO preserves status quo); Mastrio v. Sebelius, 768 F.3d 116, 120–21 (2d Cir. 2014) (status quo may require affirmative action)). The decision to grant a TRO rests in the sound discretion of the district court (JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990) (discretionary standard)).

Where the requested relief is "mandatory" - i.e., alters the status quo by commanding a positive act, a heightened standard applies: the movant must show a "clear" or "substantial" likelihood of success on the merits, or that the facts and equities are extraordinary (Cacchillo v. Insmed, Inc., 638 F.3d 401, 406 (2d Cir. 2011) (heightened standard for mandatory injunctions); Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 33–34 (2d Cir. 1995) (extraordinary facts/equities required)). These standards are applied flexibly, and the Court retains broad discretion to grant emergency relief where the equities and urgency so require.

The relief sought is prohibitory and prospective: Plaintiff seeks only to enjoin the ongoing enforcement of void Temporary Orders of Protection issued after New York was divested of jurisdiction under the UCCJEA and PKPA. The requested TRO does not require the Court to make a new custody determination or alter the status quo by affirmative act; rather, it preserves the status quo ante by recognizing the automatic legal effect of voiding ultra vires orders (Matter of Felty v. Felty, 66 A.D.3d 64, 69 (2d Dep't 2009); Thompson v. Thompson, 484 U.S. 174, 180 (1988)). Accordingly, the traditional four-

11

prong standard for prohibitory injunctive relief applies (Winter, 555 U.S. at 20; Citigroup, 598 F.3d at 35).

**Effect of Voiding the Challenged TOPs: Restoration of the Last Valid Custody Order.**

**The relief sought is prohibitory and prospective:** Plaintiff seeks only to enjoin the ongoing enforcement of void Temporary Orders of Protection ("TOPs") issued after New York was divested of jurisdiction under the UCCJEA and PKPA. Voiding these TOPs does not create a legal vacuum or require the Court to make a new custody determination. Rather, the removal of void and ultra vires orders automatically restores the last valid, lawful custody order in effect prior to the challenged TOPs (Matter of Felty v. Felty, 66 A.D.3d 64, 69 (2d Dep't 2009) (subsequent order of protection supersedes prior orders unless court provides otherwise); Thompson v. Thompson, 484 U.S. 174, 180 (1988) (last valid custody order controls absent competing operative order).

In this case, that order is the August 11, 2023, Decision and Order of Referee Dean Richardson-Mendelson, which awarded Plaintiff temporary full custody of all children (see Exhibit L). By enjoining enforcement of the void TOPs, the Court preserves the status quo ante and ensures the controlling custody arrangement reverts to the last unchallenged, non-void order. No further affirmative relief is required; the August 11, 2023 order becomes immediately enforceable as the operative custody order upon voidance of the TOPs. Accordingly, the traditional four-prong standard for prohibitory injunctive relief applies (Winter v. NRDC, 555 U.S. 7, 20 (2008); Citigroup, 598 F.3d 30, 35 (2d Cir. 2010))

1.    **B. Legal Standard for Declaratory and Injunctive Relief under the Supremacy Clause, PKPA, and UCCJEA**

Federal courts have authority to grant declaratory and injunctive relief to prevent enforcement of state court orders that are void under federal law, including the Supremacy Clause, the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") (Ex parte Young, 209 U.S. 123 (1908) (federal courts may enjoin state officials acting in violation of federal law); 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act)).

The Supremacy Clause mandates that federal law preempts conflicting state action, and the PKPA and UCCJEA require that only one state at a time may exercise jurisdiction over child custody matters. Once a state court with proper jurisdiction (here, California) has assumed exclusive custody jurisdiction, any subsequent orders by another state court (here, New York) are void ab initio and unenforceable (Thompson v. Thompson, 484 U.S. 174, 180 (1988) (PKPA precludes conflicting custody orders); Matter of Felty v. Felty, 66 A.D.3d 64, 69 (2d Dep't 2009) (UCCJEA divestiture renders subsequent orders void)).

Declaratory relief is appropriate where there is an actual controversy regarding the validity or enforceability of state orders under federal law, and injunctive relief is warranted to prevent ongoing or threatened enforcement of void orders that would cause irreparable harm and violate federal rights (28 U.S.C. §§ 2201–2202; Ex parte Young, 209 U.S. 123 (1908)). Where a state court continues to enforce custody or protection orders after being divested of jurisdiction under the UCCJEA and in contravention of the PKPA, federal courts may declare such orders void and enjoin their enforcement to vindicate federal supremacy and protect constitutional rights.

Case 7:25-cv-08524-NSR    Document 33    Filed 10/28/25    Page 14 of 22

**ARGUMENT**

**Introduction to Argument**

Plaintiff seeks emergency injunctive relief under the well-established standard for a Temporary Restraining Order ("TRO"), which requires a showing of (1) irreparable harm, (2) likelihood of success on the merits or sufficiently serious questions going to the merits, (3) a balance of equities tipping in favor of the movant, and (4) that the public interest supports relief (Winter v. NRDC, 555 U.S. 7, 20 (2008) (setting forth TRO standard); Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (Second Circuit standard)). The record is supported by sworn affidavits, medical documentation, and contemporaneous evidence demonstrating ongoing constitutional harm and the inadequacy of state remedies.

**I.    Irreparable Harm**

Legal Standard:  Plaintiff must demonstrate irreparable harm that is imminent and not compensable by monetary damages (Winter, 555 U.S. at 20 (irreparable harm required for injunctive relief); Citigroup, 598 F.3d at 35 (Second Circuit TRO standard)).

**Key Facts:**

**Coercive Institutionalization:**  Joseph ("Yossi") Levitin attests under oath to the imminent threat of renewed psychiatric institutionalization for non-compliance with his mother's wishes, a paradigmatic deprivation of liberty and familial integrity (Exhibit B; Exhibit Y; Exhibit S; Exhibit S).

**Real-Time Evidence of Coercion:**  William ("Zevi") Levitin's text and statements provide contemporaneous, non-speculative proof of a coercive, oppressive environment (Exhibits J1–J3).

14

**Ignored Professional Warnings:** Judicial Defendants disregarded medical documentation of acute psychiatric crisis and suicidal ideation, as well as AFC and professional consensus on the necessity of the father's involvement (Exhibit N; Exhibit O; Exhibit P; Exhibit T).

**Community Outcry and Systemic Bad Faith:** Letters from elected officials, rabbis, and community leaders, and the ongoing enforcement of void orders, demonstrate the inadequacy of state remedies (Exhibits A; Exhibit U).

**Summary:** The cumulative effect is a continuous, escalating pattern of harm that is immediate, ongoing, and incapable of redress through state remedies, fully satisfying the irreparable harm prong under Winter and Second Circuit law.

## II.    Likelihood of Success on the Merits

**Legal Standard:** Plaintiff must show a likelihood of success on the merits or "serious questions going to the merits" with the balance of hardships tipping decidedly in Plaintiff's favor (Citigroup, 598 F.3d at 35 (Second Circuit standard for preliminary relief)).

**Key Facts and Law:**

**Ultra Vires Orders and Loss of Jurisdiction:** The July and September 2025 Temporary Orders of Protection ("TOPs") are void ab initio, issued after New York Family Court was divested of jurisdiction under the UCCJEA (Exhibit W; Verified Complaint ¶¶ 20–25). Enforcement of void orders is not protected by judicial immunity (Pulliam v. Allen, 466 U.S. 522 (1984) (judicial immunity does not bar injunctive relief against ultra vires orders); Mireles v. Waco, 502 U.S. 9 (1991) (judicial immunity does not apply to acts taken in clear absence of jurisdiction); V.S. ex rel. T.S. v. Muhammad, 581 F. Supp. 2d

421 (E.D.N.Y. 2008) (material factual disputes over jurisdiction preclude immunity at TRO stage)).

**§ 1985 Judicial Conspiracy and Bad Faith:** Defendants, including private and state actors, conspired to condition custody and organizational privileges on coerced marriage, imposing unconstitutional conditions in violation of Perry v. Sindermann, 408 U.S. 593 (1972) (unconstitutional conditions doctrine prohibits conditioning benefits on surrender of constitutional rights); Troxel v. Granville, 530 U.S. 57 (2000) (fundamental right to familial association and custody) (Exhibits, C, D, E, F, G, H, I).

**Joint Action and Sustained Pattern of Deprivation:** The record demonstrates coordinated retaliation and deprivation of rights, including revocation of Hatzoloh EMS privileges and business contracts, and ongoing deprivation of custody and familial association (Exhibits C–I). See Dennis v. Sparks, 449 U.S. 24 (1980) (private parties acting jointly with state officials may be liable under § 1983 for deprivation of rights under color of law).

**Summary:** Even if the Court does not find a clear likelihood of success, the record presents "sufficiently serious questions going to the merits to make them a fair ground for litigation," and the balance of hardships tips decidedly in Plaintiff's favor (Citigroup, 598 F.3d at 35).

## III.  Balance of Equities

**Legal Standard:** The balance of equities must tip "decidedly" in favor of the movant for injunctive relief (Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (Second Circuit standard for preliminary

relief); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (balance of hardships must favor movant)).

**Application:** The harm to Plaintiff and his children from continued enforcement of void Temporary Orders of Protection, including deprivation of custody, risk of coercive institutionalization, and ongoing psychological trauma, is immediate and severe. Any potential harm to Defendants from the requested relief is minimal and speculative, as the relief merely restores the status quo ante by reinstating the last valid custody order (August 11, 2023) prior to the issuance of void orders (see Exhibit L). Courts routinely find that the equities favor immediate injunctive relief where children are at risk and constitutional rights are implicated.

## IV.    Public Interest

**Legal Standard:** The public interest must support the requested relief for a TRO to issue (*Winter v. NRDC*, 555 U.S. 7, 20 (2008) (public interest is a required prong for injunctive relief); *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (public interest prong satisfied where constitutional rights and child safety are at stake)).

**Application:** Granting the TRO is strongly in the public interest, as it protects children from imminent harm, upholds due process and equal protection, and ensures the integrity of judicial proceedings. The record includes advocacy from Attorneys for the Children, medical professionals, and community leaders, all supporting immediate federal intervention to safeguard the welfare of the minor children (Exhibits A, K, N, O, P, T).

## ABSTENTION AND JURISDICTION

### A.    Younger Abstention

Federal courts generally abstain from interfering with ongoing state proceedings (Younger v. Harris, 401 U.S. 37 (1971)), but abstention is unwarranted here for three independent reasons:

**No Ongoing State Proceedings:**

The New York Family Court was divested of jurisdiction over custody and visitation as of the UCCJEA minute order and California venue; Exhibit W [UCCJEA Minute Order]; Exhibit W [California Venue Transfer Order]). All subsequent New York orders, including the challenged Temporary Orders of Protection, were issued in clear absence of jurisdiction and are void ab initio.

**Extraordinary Circumstances and Inadequacy of State Remedies:**

Even if abstention were considered, the record demonstrates extraordinary circumstances and the inadequacy of state remedies. State courts repeatedly ignored urgent warnings from Attorneys for the Children and medical professionals regarding acute safety risks, including suicidal ideation and psychiatric crisis; Exhibits N [AFC Kantrowitz Affirmation], O [AFC Kass Affirmation], K [Dr. Benisz Psychiatric Evaluation], T [Medical Records]). Plaintiff was unlawfully detained by police based on void orders, with the Family Court Clerk initially denying the existence of an appellate stay (see Exhibit Z [Police Report for Illegal Detention and Void TOPs]). Despite urgent pleas, the state courts failed to stay or vacate the void orders, confirming the inadequacy of state remedies.

**Ultra Vires Orders:**

The challenged orders were issued after New York lost jurisdiction and are ultra vires. Their continued enforcement constitutes ongoing constitutional harm and warrants immediate federal intervention.

See also Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982) (extraordinary circumstances exception); Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) (inadequacy of state remedies).

**B.    Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine bars federal review of final state court judgments, but does not apply here. Plaintiff does not seek appellate review or reversal of any final state court judgment. Rather, Plaintiff seeks prospective injunctive and declaratory relief to enjoin the ongoing enforcement of Temporary Orders of Protection and related restraints that were issued after New York Family Court was divested of jurisdiction under the UCCJEA and PKPA. The relief sought is aimed at preventing further constitutional harm and restoring the last lawful custody arrangement, not at relitigating or appealing any state court decision. Accordingly, Rooker-Feldman does not bar this Court's jurisdiction over Plaintiff's claims, as the challenged orders are void ab initio and their continued enforcement constitutes ongoing ultra vires action and deprivation of federal rights.

See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (Rooker-Feldman does not bar prospective relief against ongoing enforcement of void orders).

**Summary:**

Abstention is not warranted because (1) there are no ongoing, valid state proceedings, (2) the challenged orders are void ab initio, (3) extraordinary circumstances

19

and inadequacy of state remedies are well-documented, and (4) the relief sought is prospective and equitable, not appellate review. The record, including direct findings from the UCCJEA minute order, California court's exclusive jurisdiction, AFC and medical affirmations, and police reports—makes these points unmistakable and supports immediate federal intervention.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court, pursuant to Fed. R. Civ. P. 65 and SDNY Local Civil Rule 6.1, enter an Order:

1.  Enjoining Defendants and all persons acting in concert with them from enforcing, attempting to enforce, or causing to be enforced any Temporary Orders of Protection ("TOPs") issued after the New York Family Court was divested of jurisdiction under the UCCJEA, including but not limited to the orders dated July 23, 2025 and September 2, 2025, or otherwise conditioning custody or access to Plaintiff's children on his agreement to marry;

2.  Vacating all void and ultra vires TOPs as unconstitutional and issued in clear absence of jurisdiction, in violation of Plaintiff's and his children's rights to due process, familial association, and equal protection;

3.  Declaring that all prior TOPs issued before July 23, 2025—including but not limited to those dated January and July of 2024 and September 2023—are superseded and of no further force or effect, and that no party may rely on or seek to enforce any such earlier TOPs;

4. Restoring the custody arrangement to the last valid, lawful order prior to the voided TOPs—specifically, the August 11, 2023 order of Referee Dean Richardson-Mendelson, which granted Plaintiff temporary full custody of all children;

5. Authorizing the United States Marshals Service, and any law-enforcement officer acting under its supervision, to assist Plaintiff in executing this Order, including locating and securing the minor children and ensuring their safe return to the lawful custodial parent in accordance with the August 11, 2023 custody order;

6. Waiving bond or setting nominal security pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, in light of the strong public interest in child safety and constitutional compliance;

7. Directing that any exhibits or filings containing medical records, psychiatric evaluations, or other sensitive personal information of the minors shall be filed under seal, with only redacted versions available on the public docket;

8. Granting such other and further relief as the Court deems just and proper, including attorneys' fees and costs under 42 U.S.C. § 1988, and any ancillary relief necessary to prevent further irreparable harm.

## CONCLUSION AND CERTIFICATION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the emergency relief sought herein to prevent further irreparable harm and ongoing constitutional violations. The urgency and necessity of this relief are fully supported by the attached evidence and the legal standards set forth above.

Dated: October 16, 2025

Respectfully submitted,


"/s/   Joshua Levitin

5 Lantern Court

Spring Valley, NY 10977

Ph: 845-729-2227

Email: joshua@joshualevitin.com


Defendants are directed to file an opposition by November 7, 2025 to pro se Plaintiff's emergency motion and request for a temporary restraining order. Pro se Plaintiff shall then file his reply to the opposition by November 17, 2025. The Court will schedule a hearing if necessary. The Clerk of Court is kindly directed to mail a copy of this endorsement to pro se Plaintiff at the listed address on the docket and to show service on the docket. The Clerk of Court is kindly directed to terminate the motion at ECF No. 13.

Dated: October 22, 2025

White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge