USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/01/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
JOSHUA LEVITIN,

Plaintiff,

-against-

RABBI CHAIM LEIBISH ROTTENBERG, BERYL (DAVID) FRIEDMAN, SURI (SARAH) FRIEDMAN, HON. RACHEL TANGUAY, HON. DAVID M. ASCHER, ANNA KOSOVYCH, and JOHN DOE(S) 1-10

Defendants.

---------------------------------------------------------------------X

25-cv-8524 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

*Pro se* Plaintiff Joshua Levitin ("Plaintiff") brings this civil-rights action under 42 U.S.C. §§ 1983 and 1985 against Rabbi Chaim Leibish Rottenberg, Beryl Friedman, Suri Friedman (the "Private Defendants"), the Honorable Rachel Tanguay, the Honorable David M. Ascher, Anna Kosovych, and John Does 1 through 10 (the "State Defendants"). Plaintiff alleges that the State and Private Defendants (collectively, the "Defendants") acted in concert to deprive him of his constitutional rights in connection with the state-court custody proceedings and an alleged marriage coercion scheme. (*See generally* TAC.) Specifically, Plaintiff asserts a § 1983 claim for violations of due process, equal protection, and familial association, and a § 1985(3) claim alleging a conspiracy among the Defendants to condition his custody rights and certain professional privileges on the alleged coerced marriage scheme. (TAC at 27-29.) Plaintiff seeks declaratory and injunctive relief voiding and prohibiting enforcement of certain state-court custody orders and restoring an earlier custody arrangement, as well as monetary damages for injuries resulting from

Defendants' alleged conduct, including loss of custody and familial association, emotional distress, and harm to his business and professional reputation. (TAC at 30-34.)

Before the Court are two motions to dismiss the TAC. The State Defendants filed one motion, and the Private Defendants filed the other. ("State Dfts. Mot.", ECF No. 64; "Private Dfts. Mot.", ECF No. 67.) For the reasons set forth below, Defendants' motions are granted. Plaintiff's claims are dismissed with prejudice and Plaintiff's pending application for a temporary restraining order is denied as moot.

## BACKGROUND[1]

### I. Factual Background[2]

Although the TAC is accompanied by over 500 pages of exhibits, it does not give a complete factual background of the various state-court proceedings that are at the center of this action. Defendants' moving papers provide greater factual context of the state-court proceedings.[3] The following facts are taken as true and construed in the light most favorable to the Plaintiff at this stage.

#### *a. Marriage, Divorce and Original Custody Agreement*

Joshua Levitin and Michelle Stoll had three children during their marriage: J.L., R.L. and W.L. (TAC, Ex. K-1.) On November 29, 2016, the Supreme Court of New York, Queens County

[1] The parties' briefs will be referred to herein as follows: State Defendants' Memorandum of Law in Support of their Motion to Dismiss ("State Dfts. Mem.," ECF No. 64-1); State Defendants' Reply in Support of their Motion to Dismiss ("State Dfts. Reply," ECF No. 66); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pltf. Opp. to Dfts.," ECF No. 65); Private Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Priv. Dfts. Mem.," ECF No. 67); Private Defendants' Reply in Support of their Motion to Dismiss ("Priv. Dfts. Reply," ECF No. 70).

[2] In the opposition brief, Plaintiff seeks to incorporate the factual allegations detailed in the proposed Fourth Amended Verified Complaint ("FAVC"). (Pltf. Opp. to Priv. Dfts. at ¶ 5.) The Court will not consider the facts alleged in the FAVC, as Plaintiff did not seek leave before filing a Fourth Amended Verified Complaint and the Court struck the filing from the record. (ECF No. 50.)

[3] The Court takes judicial notice of matters occurring in previous litigations involving the plaintiff, as the Court is permitted to do. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings.").

awarded Ms. Stoll sole custody of the three children, granted permission to relocate to California and awarded Plaintiff parental access and telephone contact with the children (the "2016 Custody Order"). (*Id.*; State Dfts. Mem., Ex. A.) Thereafter, the court entered a judgment of divorce on September 20, 2017, which Plaintiff appealed. (State Dfts. Mem., Ex. A.) On December 5, 2018, the intermediate appellate court, the Supreme Court of New York, Appellate Division upheld the 2016 Custody Order but granted Plaintiff additional holiday parental access and telephone contact. (*Id.*)

***b. August 17 Vacatur***

On August 11, 2023, Plaintiff filed a family offense petition in Rockland County Family Court, alleging that Ms. Stoll had endangered the welfare of W.L., the youngest child, by failing to address W.L.'s mental health challenges. (TAC at 9; State Dfts. Mem., Ex. B.) On that same day, a Court Attorney referee issued an ex parte temporary order of protection ("TOP"), awarding temporary custody of the three children to Plaintiff. (TAC, Exs. J-1, J-2.) After a court appearance, the ex parte TOP was vacated on August 17, 2023 (the "August 17 Vacatur"). (TAC, Ex. L; State Dfts. Mem., Ex. B.) On September 22, 2023, the Appellate Division issued an Order to Show Cause and, pending determination of Plaintiff's motion, stayed the August 17 Vacatur to the extent it had vacated the August 11, 2023, award of temporary custody of J.L. to Plaintiff. (TAC, Ex. L.) Plaintiff appealed, and on May 3, 2024, the Appellate Division stayed the enforcement of the August 17 Vacatur with respect to J.L. pending determination of the appeal or further order of the Family Court. (State Dfts. Mem., Ex. B.) The appeal of the August 17 Vacatur was resolved on September 17, 2025, when the Appellate Division affirmed the August 17 Vacatur. (State Dfts. Mem., Ex. B.)

***c. September 7 TOP***

On September 7, 2023, Judge Tanguay of Family Court entered a new TOP, directing Plaintiff to stay away and refrain from communication with all three children. (TAC, Ex. K-1.) Plaintiff appealed the September 7 TOP. (State Dfts. Mem., Ex. C.) On September 22, 2023, the Appellate Division issued an Order to Show Cause and, pending determination of Plaintiff's motion, stayed the September 7 TOP with respect to J.L. and permitted Plaintiff daily contact with W.L. and R.L. (TAC, Ex. L.) Despite the stay, the provisions of the September 7 TOP were subsequently extended by orders dated January 30, 2024, July 12, 2024, January 27, 2025, and July 22, 2025. (TAC, Exs. K-2, K-3, K-4; State Dfts. Mem., Ex. C.) On May 3, 2024, after the first extension, the Appellate Division stayed the enforcement of the September 7 TOP, as extended by the January 30, 2024, TOP, with respect to J.L. pending determination of the appeal or further order of the Family Court. (State Dfts. Mem., Ex. C.) The Appellate Division also stayed the no-contact provision as to W.L. and R.L. to the extent necessary to permit Plaintiff daily contact with them pending determination of the appeals. (*Id.*) On September 2, 2025, the September 7 TOP was extended again but modified to remove J.L. from the stay-away provision and eliminate the no-contact restriction for all three children. (TAC, Ex. K-5.) On September 17, 2025, the Appellate Division dismissed the appeal because (i) the September 7 TOP was superseded by the January 30, 2024, extension and (ii) the January 30, 2024, TOP extension was not appealable as of right and leave to appeal was not granted. (State Dfts. Mem., Ex. C.)

***d. Plaintiff's Allegations Concerning the Private Defendants***

Plaintiff alleges that the Private Defendants engaged in a conspiracy beginning in late 2022 to pressure Plaintiff and Devorah Pomerantz-Friedman to marry. According to Plaintiff, the Private Defendants threatened that, absent the marriage, Plaintiff would be terminated from his position

at Hatzoloh EMS. (TAC at 12.) Plaintiff alleges that, in April and June 2023, Rottenberg directed the deactivation of Plaintiff's Hatzoloh radio privileges and the termination of Plaintiff's contract with Hatzoloh. (*Id.* at 13-14.) Plaintiff attributes his alleged professional and reputational injuries to these actions by the Private Defendants. (*Id.*) Plaintiff further alleges that the scheme later expanded from professional pressure into custody pressure. (*Id.*) Specifically, Plaintiff alleges that beginning in mid-2023, the Private Defendants communicated *ex parte* with the State Defendants to manipulate the custody proceedings and condition favorable custody outcomes on Plaintiff marrying Pomerantz-Friedman. (TAC at 14-17.)

***e. Plaintiff's Allegations Concerning the State Defendants***

Plaintiff alleges that the State and Private Defendants "engaged in a sustained pattern of improper *ex parte* communications and judicial manipulation to influence custody outcomes and execute the marriage-for-custody scheme." (TAC at 12.) Plaintiff alleges that Judge Tanguay participated in the conspiracy through her handling of the custody proceedings—including the August 17 Vacatur, the September 7 TOP and subsequent extensions and allegedly communicating with the Private Defendants. (*Id.* at 7.) Plaintiff alleges that Judge Ascher, after taking over the custody proceeding from Judge Tanguay, continued issuing TOPs that Plaintiff contends conflicted with the Appellate Division's September 22, 2023, stay. (*Id.*) Plaintiff also alleges that Judge Ascher improperly attempted to transfer the custody proceedings to California while the September 22, 2023, stay remained in effect. (*Id.* at 19.) Plaintiff alleges that Chief Clerk of the Rockland County Family Court, Anna Kosovych, participated in the conspiracy by falsely denying the existence of the Appellate Division stay when contacted by Ramapo police in August 2025, allegedly contributing to Plaintiff's temporary detention. (TAC at 7.)

## II. Procedural History

Plaintiff commenced this action on October 15, 2025. (ECF No. 1.) Plaintiff amended his complaint three times. (ECF Nos. 10, 21, 25.) The TAC, filed October 21, 2025, is the operative pleading. (ECF No. 25.)

Plaintiff also filed multiple applications for emergency injunctive relief. On November 13, 2025, the Court denied Plaintiff's application for a temporary restraining order ("TRO"), concluding that the requested relief would require the Court to review and invalidate state-court custody orders and was therefore barred by the *Rooker-Feldman* doctrine. (ECF No. 45.) On January 8, 2026, the Court denied Plaintiff's renewed TRO application on the same basis and stated that it would not entertain additional motions until it resolved Defendants' motions to dismiss. (ECF No. 63.)

On February 27, 2026, the State Defendants filed their motion to dismiss, supporting memorandum of law, and reply papers. (State Dfts. Mot.; State Dfts. Mem.; State Dfts. Reply.) That same day, the Private Defendants filed their motion to dismiss, supporting memorandum of law, and reply papers. (Priv. Dfts. Mot.; Priv. Dfts. Mem.; Priv. Dfts. Reply.) Plaintiff's opposition to the Defendants' motions was also filed that day. (Pltf. Opp. to Dfts.) Plaintiff later requested leave to file a limited sur-reply, which the Court denied. (ECF Nos. 71, 73.)

## LEGAL STANDARD

## I. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

**II. Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where

the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, courts construe the pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotation marks and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## DISCUSSION

Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (See generally Priv. Dfts. Mot.; State Dfts. Mot.) For the reasons that follow, this Court: (1) dismisses Plaintiff's §§ 1983 and 1985 claims that seek relief for injuries arising from the state-court custody orders under the *Rooker-Feldman* doctrine and *Younger* abstention; and (2) dismisses Plaintiff's remaining claims for failure to state a claim.

### I. Subject Matter Jurisdiction

#### *a. Rooker-Feldman*

To the extent Plaintiff asserts §§ 1983 and 1985 claims and seeks relief related to the state-court custody orders, this Court lacks subject matter jurisdiction under *Rooker-Feldman*. The *Rooker-Feldman* doctrine bars district courts from exercising appellate jurisdiction over state-court judgments. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476, 482 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415-16 (1923); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ("Underlying the *Rooker-Feldman* doctrine is the principle . . . that within

the federal judicial system, only the Supreme Court may review state-court decisions."). The doctrine prevents "state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced" from "inviting [federal] district court review and rejection of those judgments." *See Exxon Mobil Corp. v. Saudi Basic Ind. Grp.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* applies when: (1) the federal court plaintiff "lost in state court"; (2) that plaintiff complains of injuries "from a state-court judgment"; (3) the plaintiff invites "federal-court review and rejection of the state-court judgment"; and (4) the state-court judgment was rendered before the federal case was initiated. *Hoblock*, 422 F.3d at 85; *see also Dorce v. City of N.Y.*, 2 F.4th 82, 101 (2d Cir. 2021).

Here, a liberal reading of the TAC suggests that Plaintiff challenges the August 17 Vacatur and the September 7 TOP and its subsequent extensions. Plaintiff seeks, *inter alia*, "a declaration that the July 23, 2025 and September 2, 2025 [TOPs] . . . are void ab initio and unenforceable," "a declaration that the August 11, 2023 custody order . . . is the last valid, lawful, and operative custody order," "an order enjoining Defendants . . . from enforcing . . . any TOPs issued after New York Family Court lost jurisdiction . . . ," "an order vacating all void and ultra vires TOPs," "an order reverting the custody arrangement to the last valid, lawful order . . . specifically, the August 11, 2023 order," "an order directing that [J.L.] shall not be removed from his father's residence," and "compensatory and punitive damages . . . for loss of custody." (TAC at 32-33.)

Plaintiff's request for such relief implicates each of the requirements of the *Rooker-Feldman* doctrine. (ECF Nos. 45, 63.) *First*, Plaintiff already litigated the August 17 Vacatur and September 7 TOP and lost both challenges. (State Dfts. Mem., Exs. A, B, C.) In his opposition brief, Plaintiff attempts to cast the September 22, 2023, stay order as "the central state-court ruling . . . which was favorable to Plaintiff." (Pltf. Opp. to Dfts. at ¶ 19.) However, that stay was not final:

the order clearly imposed a stay "pending hearing and determination of this motion." (TAC, Ex. L.) The stay was superseded on September 17, 2025, when the Appellate Division issued rulings adverse to Plaintiff, affirming the August 17 Vacatur and dismissing the appeal of the September 7 TOP. (State Dfts. Mem., Exs. B, C.) Plaintiff has not alleged that the September 17, 2025 Appellate Division rulings are not final, nor has he alleged that he has appealed them. *See Hunter v. McMahon*, 75 F.4th 62, 65 (2d Cir. 2023). Plaintiff's citation to *Green v. Mattingly* is unavailing: in *Green*, the Second Circuit held that plaintiff was not a "state-court loser" because there was no final adverse order against plaintiff, and plaintiff merely sought redress for injuries caused by an adverse interlocutory order. 585 F.3d 97, 102-03 (2d Cir. 2009). In the instant case, the opposite is true—Plaintiff is a state-court loser, as there was an interlocutory order in his favor which was then overturned on appeal, and the final judgment was adverse to Plaintiff.

*Second*, Plaintiff's alleged injuries flow from the state-court judgment he now seeks to overturn in federal court. Plaintiff seeks relief directly related to the Rockland County Family Court's August 17 and September 7, 2023, orders, which reversed the August 11 custody determination in Plaintiff's favor and returned custody to the children's mother. (TAC at 32-33.) Thus, the state-court orders did not merely "ratif[y], acquiesce[] in, or [leave] unpunished" an independently existing injury; they produced the injury for which Plaintiff now seeks relief. *Hoblock*, 422 F.3d at 88 ("A federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it."); *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) (explaining that *Rooker-Feldman* turns on the "causal relationship" between the state-court judgment and the federal plaintiff's injury);

*Green,* 585 F.3d at 102 (finding the causation requirement satisfied where the alleged injuries did not exist "prior in time to the state-court proceedings").[4]

*Third*, Plaintiff invites this Court to review and reject the judgments of the Appellate Division. As the Second Circuit explained in *Green*, "if the [court] had entered a final order . . . removing plaintiff's child from her custody . . . [and] [i]f at the completion of her appeals, plaintiff were to bring a § 1983 action in federal court seeking the return of her child, her action would unquestionably 'invite district court review and rejection' of the Family Court's order." 585 F.3d at 103. The circumstances contemplated in *Green* are present here. Notwithstanding Plaintiff's assertion in his opposition brief that he is not asking this Court to "vacate, modify or 'restore' any custody or protection order or to decide where his children live," the relief Plaintiff requests would, as a practical matter, produce that very result. (*Compare* Pltf. Opp. to Dfts. at 22-23 *with* TAC at 32-33.) Plaintiff's attempt to reframe the requested relief as merely "prospective" does not alter the fact that the relief he seeks would interfere with the enforcement and administration of state-court custody orders. *See Hoblock*, 422 F.3d at 86 ("Just presenting in federal court a legal theory not raised in state court, however, cannot insulate a federal plaintiff's suit from *Rooker-Feldman* if the federal suit nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed.").

*Lastly*, the Appellate Division decisions affirming the August 17 Vacatur and September 7 TOP were issued on September 17, 2025, preceding the commencement of the instant action. (ECF No. 1; State Dfts. Mem., Exs. B, C.)

[4] Plaintiff does not allege any improper conduct by the State Defendants, or any coordination related to custody disputes between the Private and State Defendants, preceding the August 17 Vacatur or the September 7 TOP. (TAC at 2.)

Plaintiff's contention that the Family Court lacked jurisdiction under the UCCJEA does not alter the analysis. Federal district courts do not acquire jurisdiction simply because a plaintiff alleges that a state court acted without jurisdiction. *Feldman*, 460 U.S. at 486. Allegations that a state court exceeded its jurisdiction are themselves challenges to the validity of the state-court judgment and must be raised through the state appellate process, not collateral federal litigation. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014).

Accordingly, to the extent Plaintiff brings §§ 1983 and 1985 claims and seeks relief for injuries caused by the state-court custody orders, those claims are barred by *Rooker-Feldman*.

***b. Younger Abstention***

Moreover, federal intervention is independently barred by *Younger* abstention, which counsels against federal interference in ongoing state custody matters. In *Younger v. Harris*, the Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding. 401 U.S. 37 (1971). Application of the *Younger* abstention doctrine has been extended to the three following categories of state-court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 69-70 (2013). Courts have held that in the context of *Younger* abstention, custody proceedings are "a subject in which the 'states have an especially strong interest.'" *Falco v. Justs. of the Matrim. Parts of the Sup. Ct.*, 805 F.3d 425, 427 (2d Cir. 2015). Plaintiff's Section 1983 allegations are based "on the state custody proceedings and . . . involve the state's compelling interest in protecting the welfare of children," and therefore, "Plaintiff may raise these claims in the state proceedings." *Stumpf v. Maywalt*, 605 F. Supp. 3d 511, 518 (W.D.N.Y. 2022). Plaintiff disputes the applicability of *Younger* due to the alleged

"structurally biased tribunal and an entrenched bad-faith pattern" in conducting the custody proceedings and argues that the "bad-faith exception" to the *Younger* doctrine applies. (Pltf. Opp. to Dfts. at 24-25.) This argument is unavailing. While the Supreme Court has recognized *Younger* abstention may not apply in special circumstances suggesting bad faith, *Gibson v. Berryhill*, 411 U.S. 564, 574 (1973), the Supreme Court has also clarified that these "extraordinary circumstances" must "render the state court incapable of fairly and fully adjudicating the federal issues before it." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975). Plaintiff has been litigating the custody of his children since 2016, yet he has not alleged that he raised any constitutional claims in any of the state proceedings, or that he was unable to do so. Because Plaintiff has not pled that he cannot vindicate his constitutional claims in state court, the bad-faith exception to *Younger* does not apply. *Maywalt*, 605 F. Supp. 3d at 518 (explaining that *Younger* abstention applied where "Plaintiff ask[ed] the Court to declare unconstitutional and to dismiss the state custody proceedings, based on his allegations relating to Defendants' procedure for removing his children, alleged coercion they used during that process, and making untrue statements during the state custody proceedings" but "Plaintiff [did] not allege that he [could not] vindicate his claims in state court").

For these reasons, the Court abstains from exercising jurisdiction over Plaintiff's claims for injunctive or declaratory relief that would intrude upon ongoing state-court custody proceedings.

## II. Failure to State a Claim

Having addressed Plaintiff's §§ 1983 and 1985 claims related to the state-court custody orders, the Court turns to Plaintiff's remaining §§ 1983 and 1985 claims related to Plaintiff's professional and reputational harm.

***a. § 1983***

To establish a claim under 42 U.S.C. § 1983 ("Section 1983"), Plaintiff must show that he was denied a constitutional or federal statutory right and that the deprivation of that right occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not grant any substantive rights but rather "provides a method for vindicating federal rights elsewhere conferred," such as in the Constitution or a federal statute. *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (noting that Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution"). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). Private entities can be said to engage in state action where "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009).

Plaintiff purports to allege an overarching conspiracy involving both the Private Defendants and State Defendants that caused harm to his professional reputation, but Plaintiff does not attribute any related alleged acts to the State Defendants. Instead, Plaintiff attributes the concrete acts alleged to have caused his loss of professional reputation to the Private Defendants. (TAC at 12-14.) However, beyond conclusory statements, Plaintiff does not allege any facts that make it plausible the Private Defendants acted under color of state law. Plaintiff does not allege that the State Defendants compelled the Private Defendants to cause the alleged professional harm,

or that there is a close enough nexus between the State Defendants and the organizational decisions made by Hatzoloh EMS, or that organizational decisions of Hatzoloh EMS are traditionally the exclusive prerogative of the State. Accordingly, Plaintiff fails to state a plausible claim under Section 1983.

***b. § 1985***

To establish a claim under 42 U.S.C. § 1985 ("Section 1985"), a plaintiff must establish (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). The conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. at 829).

The TAC is entirely silent on allegations of racial animus or other "invidious discriminatory animus" that allegedly motivated Defendants' conduct. Plaintiff attempts to salvage his deficient pleading by stating in his opposition brief that he "was targeted because he refused to enter a coerced religious marriage demanded by Orthodox Jewish religious authorities." (Pltf. Opp. to Dfts. at 36.) However, "[m]ere conclusory allegations are insufficient to establish a cause of action for a violation of civil rights," *Mian*, 7 F.3d at 1087. Beyond these conclusory allegations, at no point in the TAC nor the opposition brief does Plaintiff plead facts that make discriminatory animus plausible. Religious animus cannot be inferred merely from the fact that the Private

Defendants are Orthodox Jewish religious authorities. Plaintiff must plausibly allege that the Private Defendants acted against him *because of* his membership in a protected class, and Plaintiff has failed to do so. Accordingly, Plaintiff's Section 1985 conspiracy claim is dismissed.

## III. Request for Jurisdictional Discovery

Plaintiff further contends that "if factual disputes preclude jurisdictional resolution," he requests "limited" discovery. (Pltf. Opp. to Dfts. at 7.) Jurisdictional discovery in this case is not warranted. While courts may permit discovery where jurisdictional facts are genuinely disputed, it is not appropriate where, as here, those facts have been adequately set forth and remain uncontroverted. *See Northfield Ins. Co. v. GM Star Constr., Inc.*, 532 F. Supp. 3d 73, 74-75 (E.D.N.Y. 2021) (declining discovery where party lacked concrete basis to dispute citizenship and cautioning against "mini-litigation" on threshold jurisdiction); *see also PMX Agency LLC v. Blackstreet Cap. Holdings, LLC*, No. 1:16-CV-03849 (ALC), 2017 WL 3605380, at *2 (S.D.N.Y. Aug. 21, 2017) ("The decision whether to grant jurisdictional discovery is committed to the sound discretion of the Court.") Here, the material jurisdictional facts are apparent from the pleadings and state-court record and are not genuinely disputed. Under these circumstances, further jurisdictional discovery would not aid the Court's determination.

## IV. Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

However, while "*pro se* plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." *Hassan v. U.S. Dep't of Veterans Affs.*, 137 F. App'x 418, 420 (2d Cir. 2005).

This is Plaintiff's Third Amended Complaint. Through the various amendments, Plaintiff has failed to cure the jurisdictional defect in the TAC. At bottom, the relief Plaintiff seeks would require this Court to review and reject the state-court custody determinations. That defect cannot be cured through an amended pleading. *See Russo v. GMAC Mortg., LLC*, 549 F. App'x 8, 11 (2d Cir. 2013) (affirming denial of leave to amend because amendment "would have been futile in light of the *Rooker-Feldman* doctrine"). Accordingly, further amendment of Plaintiff's claims arising from the state-court custody orders would be futile.

The same is true of Plaintiff's §§ 1983 and 1985 claims arising from alleged harm to his professional reputation. Despite multiple amendments and extensive briefing, Plaintiff has identified no facts plausibly suggesting that the Private Defendants' conduct was under color of state law. Nor has he identified any facts suggesting that the loss of professional reputation was motivated by religious or other discriminatory animus. These deficiencies are therefore not attributable to a pleading omission that might be cured through another opportunity to amend. Accordingly, leave to amend would be futile and is denied.

**CONCLUSION**

For the foregoing reasons, Plaintiff's claims are dismissed with prejudice. Because the Court dismisses Plaintiff's claims in their entirety, Plaintiff's pending application for a temporary restraining order is denied as moot. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 64 and 67, and to terminate the action. The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff and to show service on the docket.

Dated: September 1, 2026
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge